Good morning, Your Honors. May it please the Court, Jonathan Libby appearing on behalf of the appellant, Donald Woodfield. I'd ask to reserve two minutes for rebuttal. Your Honors, as an initial matter, I would note the parties are in agreement that there was a double-counting error in the sentencing guidelines calculation, and as a result, a resentencing must be ordered. And obviously, this is going to have to be, the resentence is going to have to be in accordance with Booker. Judge Baird has retired from defense, so it's going to have to be before another district court judge. All right. So my question is, given that, does anything else matter? Well, what I was planning on focusing on, Your Honors, the breach of the plea agreement. But why the sentence? Do you have any interest in undoing the plea agreement as opposed to having resentencing? We do. You do? To the extent that it does include an appeal waiver and that it would preclude Mr. Woodfield from appealing any resentencing. And also, it's not clear what, in fact, Mr. Woodfield can get out of the plea agreement at this point. We're asking that the plea agreement be voided. Well, if it's voided, then you don't have a plea agreement. Then you have to either renegotiate a plea agreement or, I'm sorry? Or plead open. You don't plead open without a plea agreement. Right. Or go to trial. Beg your pardon? Or go to trial. Yeah. Well, we have no intention of going to trial. Mr. Woodfield certainly wants to plead guilty, but he does not want to plead guilty with this plea agreement, which includes the appeal waiver. Normally, the defendant would be entitled to either specific performance. I can see where you can, you might be able to, if you needed to, you might be able to get a second appeal. Well, he would be entitled to a resentencing. But he's entitled to a resentencing anyway. Well, that's correct. But with the plea agreement, you're trying to get a second appeal, right? Well, he'd be looking to, if necessary, upon resentencing, if there is a basis to which  Right. So he would be entitled to a second appeal. Right. But if you're going to have resentencing, the reason why you say that there was a breach of the plea agreement was because there was a breach of the sentencing. If you have resentencing, there might not be a breach of the second sentencing. Well, there was a breach of the plea agreement, which I believe should I understand that, but now we're starting all over again. We're going back. We're going to have a new sentencing. Yeah. The fact which you claim is a breach of the plea agreement was the fact that they recommended, like, lifetime supervised release. Right. We're going to have a new sentencing. They may not recommend lifetime supervised release this time, so there may not be a breach of the plea agreement. Well, that's true. Well, it's more than that. Hold on. If you were to prevail on your theory here, you would have a guarantee against a lifetime supervision. If you were to prevail, your theory is you get the low end of the scale on supervised release. Well. Just a minute. You would give that up if you don't have a plea agreement. Then you could get sentenced to the lifetime supervised release. Well, in fact, Your Honor, that's not true. If we were to get specific performance of the plea agreement. Yeah. Because this plea agreement was negotiated pre-Booker, Mr. Whitfield would not receive any of the benefits that he negotiated in this particular plea agreement. For example, because of double counting error, the total offense level under the advisory guideline range will now be 22. Well, because it's 22, that relieves the government of its obligation to recommend a low end sentence. So the government is relieved of that. And in terms of it doesn't have to recommend it, it's precluded from recommending any departures. You have to make your decisions. You can end up with a much longer sentence now. Well, that's certainly the case. But it's. You're going to have a different judge. You had a pretty good judge last time. You're going to have a different judge. Theory applied really well, it looked to me. I made a mistake here with the double counting. But it looked to me like she went out of her way to be fair to your client and fair to the government. And you know what the wheel looks like downtown. We know one thing for sure. You're not going to get Judge Baird again. That's true. That's true. That's true. But. Unless you guys are willing to rent a judge. But post Booker, of course, whether or not the government is obligated to recommend a low sentence. The judge is not obligated to impose a low sentence. And I guess the question is, other than doing away with a double counting. Do you really want to blast away the whole agreement? I mean, do you really want to go back, start from scratch? No sentencing guidelines. Take your chances for your client as to who the judge is going to be and what he's going to get? Well, I don't, except we're stuck with the fact that post Booker, the judge is going to be free to impose whatever. I mean, obviously, the judge was before. But now it's even clearer that the judge has much greater discretion post Booker, regardless of what the government may or may not recommend. Well, we could certainly send the case back and order a correction of the double counting without opening up the whole process to to to to a resentencing. Maybe we could even send it back if you wanted to argue the point about the lifetime probation and a couple of other points. You know, we might be able to order correction without ordering a full resentencing. And I'm a little surprised that maybe you think you and your client are very lucky and there are some excellent and very generous judges downtown. But as we know, there are some who are less so. So I'm just I'm sure you're really taking a risk for your client. And what it sounds to me like you're doing is you're saying you want to sweep the whole thing aside and go back for an open resentencing. And that's you. It's your clients. It's your decision. It strikes me as a very risky thing to do. Well, it's certainly risky, but the risk already exists. Whether or not. I don't think you listen to some of the questions. He was asking whether you would request a correction of the sentence. And I didn't hear you say yes. I say, well, we have a great risk. Well, if that's what you were requesting and received, you wouldn't be taking a risk. Well, but Your Honor, this is going back before another judge. And what the judge can do. No. Even if we take off the two levels, even if we take off the two levels because the double counting, that simply changes the range. The court, this new judge, can sentence anywhere within that range. And in fact, if the judge. Maybe we ought to try once again to explain what Judge Kuczynski was asking you. He said to you, if you were just to get the double counting corrected and the lifetime supervision corrected. And that was the only remedy, those two corrections. You then would not be going before any other judge at all. Other than for the ministerial implementation of our order. You would not have to expose your client to the full risk of a resentment, a possible benefit. Like a very generous judge who might let him go home. Well, I guess, Your Honor, I guess I'm confused by the suggestion because if the court did order that because the double counting error, we took two levels off, all that would do. Unless the court's going to then direct the district court judge who resentences him without those two levels that he must sentence at the low end. That's what's being suggested. You're the lawyer. Are you asking us to do that? Are you urging us? You're the advocate for your client. I certainly. I mean, I've never seen that before, Your Honor. And if Your Honor, if the court would like to, in fact, order that he be resented at the low end. We don't even know whether that's what you would like. What we've been trying to get out of you for the last eight minutes, eight and a half minutes, is whether that would be a preferable position for your client. I mean, you might just say, no, I want to go back, bear back. I want a new judge, a new sentencing. And, you know, I bet my lawyer's so good he can get me straight probation. I mean, that's one way. I mean, would you prefer a simple correction of the sentence? You're – I certainly understand the question. And it's a difficult question to answer, because we do have a number of factors here. We have not just the double counting error. We do have the lifetime supervision. My understanding of your problem is that the lifetime supervision, there's no theory by which you're entitled to have the lifetime supervision eliminated. The theory is that you're entitled to not have the government recommend it. That's correct. And the court here, Judge Baird, was under – was given the wrong impression. The government, in fact, told Judge Baird that the guidelines instructed her to impose lifetime supervision. Well, that's just – I mean, she made a mistake if she thought that. That's not the issue. The issue is that they – as I understand it, that they had an obligation under the plea agreement to recommend the low end of the guidelines, and in the case of the supervision, although they argue otherwise, your argument is that that is two years, not lifetime. But that doesn't – that wouldn't get you that sentence, and we couldn't order that sentence. That's the problem. That's the problem. Right. I don't know that the court can, in fact, order the sentence. Why don't you save your one-second rebuttal and think about that question while we hear from the government. Thank you, Your Honor. Before we get too deeply into giving up things. May it please the Court. Jason DeBretto appearing on behalf of the United States. Your Honor, because the government is conceding error on the double-counting issue and is not seeking to enforce waiver with respect to that issue, we will have a de novo sentencing hearing in the future. All right. Now, if you have another sentencing hearing, do you have a position as to what your position will be on the lifetime supervision? I believe the government will, in fact, request that the court follow the recommendation and impose a lifetime term of supervised release. So you're going to continue to take the position that you're allowed to do that under the plea agreement? Yes, Your Honor. Therefore, we do have to decide whether that's a breach of the plea agreement. There's no point in not doing it because it's just going to happen again. I would agree with Your Honor. The position of the government is that because we have conceded error, however, I do agree with defense counsel that upon remand we will have a new judge, we will have a de novo sentencing hearing at which a new record will be developed. And we might have a vacation of the plea agreement. That's a possibility, Your Honor. And because of that, the fact that there will be a new record, this Court need not reach the merits of defendants' remaining challenges because, in fact, to do so effectively, this Court would have to anticipate what the record would be at this new hearing. But you just told us that the record's going to be that you are going to recommend the lifetime supervised release. So why shouldn't we decide that? Well, Your Honor, that may be an exception among defendants' arguments. However, the record will also be that it will also benefit additional briefing from both parties and possibly new facts from both parties to support whatever terms and conditions that the Court imposes on resentencing. Tell me, Mr. de Breslau. Yes, Your Honor. Is it the – I had a case in this recorder about child pornography where we got a recommendation from the probation department. And many of the same conditions, as in this case, were suggested, the lifetime supervision, the ban on computer use, the ban on anything having to do with pornography. If I remember correctly, there was a cookie cutter. Is that the policy? Is that what's coming out of the probation office these days in all computer pornography cases, in your experience? Is it some sort of policy that these things are going to be imposed whenever there is computer pornography? I don't think I'm confident to answer that question accurately, Your Honor. I do not specialize in child pornography cases. I've handled, I believe, four cases more or less. Well, how about those four? Of those four, I've taken three to sentencing. And in all three of those – You lost one? No, actually, one I only handled a bail appeal issue. Okay. The other three I'll try guilty, Your Honor. In all those cases – Those are hard cases to lose. They are. They are. They are. And I believe the one bail hearing I found, I covered that matter also resulted in a conviction. In all the cases I have handled, there have been terms and conditions that related to – I believe the Court has followed a lifetime term in every case. And there have been terms and conditions relating to Internet usage. I don't think I did. I do not believe Your Honor was one of the four. No, no. I don't remember, but I do remember seeing – I guess I could look it up. But that is what is always recommended by the Probation Office. Well, I believe that has been, if not the policy, the practice of both the Probation Office and the U.S. Attorney's Office to follow the guidelines of recommendation, which, of course, is for a lifetime term. So do you want to tell us why it's not a breach of the plea agreement to have taken that position and to intend to take it in the future? Certainly not. First of all, let me just ask a predecessor question. Your briefs were a little unclear about this, but do you agree that if there was a breach of the plea agreement, that includes – that voids the non-appeal agreement? Yes, Your Honor. Okay. The obligation of the government to make a low-end recommendation is addressed in two locations in the plea agreement. In the excerpt of the record at pages 9 and 10, the first time that the plea agreement addresses the low-end recommendation, it does so stating that the parties agree that the defendant be sentenced to a term of imprisonment at the low end. So it expressly restricts the low-end recommendation to the imprisonment term. Just three paragraphs later on the next page, this same obligation is picked up again by the plea agreement on page 10 of the excerpt of the record. At that time, the obligation is specified in further detail and states that the government must recommend that the defendant be sentenced at the low end of the guidelines range, provided that the offense level is calculated at 24 or higher, and provided the court does not depart downward in offense level or criminal history category. As this Court knows, both of those terms, the offense level and the criminal history category, pertain solely to the term or the range of imprisonment, not to any other range contained in the guidelines. And so by the express terms of the stipulation and by the implicit term of the law. Well, it could say provided the sentencing is on a Tuesday or Thursday. The provided clause has nothing to do with what you are obligated to do in the substantive clause. It says under these conditions, you have to go to the low range. Were that second provision alone, I would agree with Your Honor. If it's not divorce in this context, that paragraph follows on the agreement of the parties that the stipulation of low-end recommendation pertains to imprisonment. At the least, it's ambiguous and it's construed against you. If it were ambiguous, I would agree, Your Honor. Except for that, in construing what the point of this provision is, we know that the parties were talking about imprisonment at the time they agreed to this agreement. Well, you may be interested in, you know, the sentence is only one, the imprisonment sentence, only one out of three possible things. It could be a two-month sentence and a million-dollar fine. The million dollars could be fairly significant to you. And if you bargained to get treated at the low range, you might be interested in the fine as well as the sentence. And you may be interested, if I understand that, it's hard to believe, but is it true that when you have a supervised release period that you can be, and there's a violation, you can be sentenced for the full term of that period even if it exceeds the maximum sentence for the offense? Yes, Your Honor. So you could send them to jail for life. You don't think that's fairly significant? That's something you'd be interested in bargaining for? That if you violated this by possessing a computer or violating one of these terms, you could face a life sentence? Certainly it was something that I would be interested in bargaining for. But if we actually look at the Fleger-Mintness case, we have the parties agreeing the low-end recommendation pertains to imprisonment. The next page, we have a recommendation. Doesn't that cut in the opposite direction? The fact that they spelled out term of imprisonment in one place and not in the other? And that earlier in the plea agreement sentence, it's plain that sentence does include the term of supervised release in paragraph 4? It might, Your Honor, except for, again, the triggers that are set forth by the parties in that paragraph expressly pertain to the determination of the range of imprisonment on the guidelines and do not pertain to any other determination. And so this Court would have to read into that paragraph, or because this Court finds that's ambiguous, this Court would have to ignore the fact that the terms of that provision are directly tied to the imprisonment range. There is a range in the sentencing guidelines with regard to the supervised release of 2 to 3 years, right? So range has a sensible application in that context. It does. The position in the government's papers is that because there's a recommendation provision in the guidelines that recommends the lifetime term, that range is not germane to this case. However, there is a range provided in the guidelines for the release. But it's not what's meant. I mean, this is somewhat influenced, again, by Booker. But at least at that point, one was mandatory and the other one was not mandatory. Yes, Your Honor. And there's obviously lots of stuff in the guidelines that wasn't mandatory. And my understanding is that in general, an agreement about ranges had to do with mandatory, not nonmandatory provisions. That's correct, Your Honor. Do you know whether there's a case on the question of whether you can take a one-year sentence, for instance, maximum, and turn it into a life sentence by finding a violation of probation, such as someone doesn't notify the probation officer when he changes his address, that that can then make, expose you to a lifetime sentence? Your Honor, I had not considered this question before today. I don't believe there was a case that addresses that. I'm not aware. I think the lifetime recommendation is a relatively new provision in the guidelines. And I've not seen or heard of any court using the or of an instance in which the term of imprisonment provided by the supervised release term was so grossly disproportionate to the term of imprisonment provided by the count of conviction. All right. Thank you. Thank you, Your Honor. The term in these pre-agreements, again, in your experience, they never specify – I know that occasionally they will have a pre-agreement, as Judge Reinhart suggested. If there's a fine involved, if it's a defendant who can pay a fine and the government is interested in getting a fine, I know that that's often part of the pre-negotiations. But the term of supervised release is not something that's normally talked about and negotiated or put in the pre-agreement? Not in my experience, Your Honor. And, in fact, this language that the Court is using today is, in fact, the stock language used by the U.S. Attorney's Office for the Central District of California. I assure the Court that in my practice, I will not be remiss on that paragraph in the future. However, it becomes a much bigger issue when it becomes lifetime as opposed to maximum of three years. I think probably maximum of three years, most judges will give the maximum without thinking much about it, figuring it's a reasonable amount of time for somebody to be under supervision. It's not that big a deal. But lifetime becomes quite a serious matter. A lifetime – I can certainly see where somebody would sooner spend six more months in jail or an additional year in prison than take a lifetime of supervised release. But you're telling me that this has not been updated in the – No, Your Honor. The lifetime term obviously was created and reflects Congress's determination that sex offenders present unique problems of recidivism. And so this issue, I think, is largely and entirely confined. Unlike thieves or anybody else, you know, who change their stripes all the time, right? Precisely, Your Honor. They'll actually turn over a new leaf and never get tempted to steal again. Yes, Your Honor. I appreciate it. Or be this – wife be this or, you know, anything like that. I can appreciate the Court's negative view of the hopes of rehabilitation more generally. However, there is specific evidence supporting the notion that sex offenders have the unique attribute of having increased likelihood of recidivism over time. Unlike the armed bank robber who, as he reaches his golden years, may not be as prone to engaging in offenses, there is substantial evidence cited in the government's briefs and considered by Congress that sex offenders do, in fact, continue to engage in their criminal behavior well into their latter years. To go back briefly to your thesis, is your thesis that the agreement doesn't cover supervised release, or is it that you complied with it by recommending lifetime supervised release? The government makes bold arguments in its papers. I believe that the essential and more important argument is that, as I read it, and I believe as it is fairly read, this pre-agreement does not impose upon the government any obligation or respect to the term of supervised release. And so, in fact, if the government had asked not for lifetime, but for the high end of the applicable range, it's still allowed. So if you had asked for three years, that would have been okay, too? Precisely, Your Honor. And if there were no lifetime involved? Yes, Your Honor. And if there was no recommendation problem, it would still be okay? Yes, Your Honor. All right.  Thank you. Have you thought about what remedy you would like? Do you want to set aside the plea agreement? As some of the discussion was, lifetime supervision is a serious thing. A fairly serious thing, yes. And that is the biggest concern here. Well, then I would think you would want to keep the plea agreement. Even though there's a change, the sentencing judge is required to either follow the guidelines or have a good reason for not following them. Sure. So it's not meaningless to have an agreement. Except that the plea agreement now does not do anything for him. The government is going to be relieved of its obligation under the terms of the plea agreement to recommend a low-end sentence because of the double counting error. They were only obligated to recommend a low-end sentence if the guideline range was 24 or below. Taking off the two points because of double counting error, it's now going to be a level 22, which relieves them of the obligation to recommend a low-end sentence. So that leaves you with the only remedy for avoiding a possible lifetime sentence. The Judge Kaczynski's inquiry about whether you think, A, whether you think it's possible to simply correct some errors, and, two, whether you're requesting that. Yeah. I mean, I don't think it's, in fact, possible to correct that under the circumstances. The other one maybe, but not that one. Correct. But then all you're going to end up with, if you avoid the plea agreement, is a lifetime recommendation is presumably the same thing. You're going to go back. You're going to – even if you plead with no agreement, the government has already told you what they're going to recommend. So why are you in any different position? And the next judge might not go down from level 3 to level 2, right? Well, that's certainly true, and obviously we would be stuck with that. That's obviously a consideration. But the lifetime supervision is – There's a very good chance your client will wind up with more time. It's a possibility. It's certainly a possibility. But I think the possibility exists – Then if you just dismiss the appeal. I'm sorry, Your Honor? Then if you just dismiss the appeal, if you – I mean, it's entirely possible that you're going to go back and any kind of relief you get here is going to result in – it's not just a matter of discretion. I mean, Judge Baird took that, what I thought was a very generous step, in going down from 3 to 2. Yes. Which I have difficulty believing will be replicated. Well, of course, one difference, of course, is we – I say we. We did not, in fact, represent Mr. Woodfield at trial. But under the plea agreement, Mr. Woodfield was precluded from raising any departure requests. And so the judge's response, say, departed downward on the criminal history. If there's no plea agreement, then obviously Mr. Woodfield is also free to seek anything he chooses to seek. Now, I do just want to note, in response to something the government said, the government was discussing in terms of its low-end recommendation. The government was also, under the plea agreement, required not to argue or suggest for any upward departures. Lifetime supervision is an upward departure from a 2- to 3-year range. Now, the government premises this on this was a recommendation that was – that the Court was required to follow, but that's simply not true. It was a nonbinding policy statement. The Sentencing Commission, when it – when it created the nonbinding policy statement, in fact, that's Amendment 646, made very clear that it is not required that they impose lifetime supervision. And I also just want to say, in my office's experience, lifetime supervision is not the norm in child pornography cases represented by our office. I know of only one other case in my office in which lifetime supervision was imposed. Usually, it's a 3-year range. So perhaps Mr. DeGreffio has been very lucky in seeking lifetime supervision, but in my experience, that's not the norm. Kagan. Well, for one thing, it might matter what the defendant had done and whether there were traffickers or whatever. That's right. And of course, he was not a trafficker here. There was not any aggravating circumstances here compared to other cases that my office handles which would indicate that lifetime supervision was necessary versus somewhere in the 2- to 3-year range, unless the Court has any additional questions. Well, arguably, traffickers are less likely to need lifetime supervision. Users are the ones who can't sustain themselves. Right. I mean, the – So is it your experience that the probation office always comes up with a lifetime recommendation? No, Your Honor. And I don't actually read – well, I mean, the probation officer recommended lifetime supervision here. That's true. In the report itself, it in fact correctly indicated what the law stated and what the guideline range was, and then came up with the recommendation of lifetime. I have – in my experience, I haven't seen that before, except in one other case where it was – the circumstances much more aggravating than what we had here. So that's not my experience or the experience of my office. Thank you, counsel. Thank you. The case is arguably submitted. The next case for oral argument is Trevino v. Prunty. Thank you. Thank you.
judges: Reinhardt, Kozinski, Berzon